

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00392-CV

**EILENBERGER'S, INC. D/B/A SUNSHINE DISTRIBUTORS OF SAN ANTONIO**
and William L. Jones,
Appellants

v.

**WESTPOINT HOME, LLC**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI08806
Honorable Aaron Haas, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: January 18, 2023

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Eilenberger's, Inc. d/b/a Sunshine Distributors of San Antonio and William L. Jones appeal

the trial court's summary judgment awarding WestPoint Home $179,989.44 in damages and

$89,002.25 in attorney's fees. We affirm in part and reverse and remand in part.

### BACKGROUND

WestPoint manufactures textiles such as linens and towels. Non-party Sunshine

Distributors, Inc. (Sunshine) purchased WestPoint textiles in bulk and distributed them to the hotel

and hospitality industry. In June 2017, Sunshine sold its assets to Eilenberger's, Inc. d/b/a Sunshine

Distributors of San Antonio (SDSA). After SDSA completed a credit application, WestPoint provided goods and services to SDSA on an open account.

When SDSA assumed Sunshine's assets, it explicitly assumed liability for a specific invoice for goods Sunshine had ordered from WestPoint. WestPoint delivered those goods prior to the asset sale, and SDSA paid that invoice. After the asset sale, however, SDSA received goods filling three other orders Sunshine had placed before the asset sale and had not informed SDSA about:

| Order | Delivery | Invoice |
|---|---|---|
| PO 7030 | 7/12/17 | $10,714.77 |
| PO 7438 | 8/3/17 | $61,020.00 |
| PO 7385-1 | 11/2/17 | $112,806.24 |

SDSA paid the invoice for PO 7030. It did not pay the invoices for PO 7438 or PO 7385-1. During the same period, SDSA also failed to pay for three orders it placed itself.

WestPoint sued SDSA and its guarantor, William L. Jones, for nonpayment of the five invoices. WestPoint asserted claims for: (1) suit on a sworn account; (2) breach of contract; and (3) quantum meruit. SDSA raised affirmative defenses of failure of consideration and failure to mitigate damages. WestPoint filed a traditional motion for summary judgment on its claims and a no-evidence motion for summary judgment on SDSA's affirmative defenses.[1] The trial court granted summary judgment and awarded WestPoint $179,989.44—the principal amount due on the five unpaid invoices—plus $89,002.25 in attorney's fees.

SDSA appeals that order as it relates to two unpaid invoices for orders Sunshine placed before the asset sale to SDSA—PO 7438 and PO 7385-1—and the amount of attorney's fees.

---

[1] In its first amended petition, WestPoint added a fraud in the inducement claim against SDSA and breach of contract and negligent misrepresentation claims against Sunshine. WestPoint non-suited and dismissed these additional claims.

**ANALYSIS**

***Summary Judgment***

*Standard of Review*

To be entitled to a traditional summary judgment, the movant must show there are no genuine issues as to any material facts and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A plaintiff is entitled to traditional summary judgment on its own affirmative claim if it conclusively proves all essential elements of that claim. *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet. denied). Once the movant has established the right to a summary judgment, the burden of proof "shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

A party may obtain a no-evidence summary judgment on matters on which it does not bear the burden of proof at trial. TEX. R. CIV. P. 166a(i). "The motion must state the elements as to which there is no evidence." *Id*. If these requirements are met, then the court must grant the motion unless the respondent produces probative summary judgment evidence raising a genuine issue of material fact. *See id*. We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). If the nonmovant brings forward

more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

"We review the trial court's grant of summary judgment de novo." *Lujan*, 555 S.W.3d at 84. We consider the evidence in the light most favorable to the respondent and indulge every reasonable inference in its favor. *Id*. "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

*Applicable Law*

Here, the underlying transaction involves the sale of goods governed by the Uniform Commercial Code (UCC). TEX. BUS. & COM. CODE ANN. § 2.102; *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 217–18 (Tex. 2002); *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 570 (Tex. 1996). Under the UCC, as codified in the Texas Business and Commerce Code, a contract for the sale of goods is enforceable without a writing if the goods are "received and accepted." TEX. BUS. & COM. CODE ANN. § 2.201(c)(3). Acceptance of goods received occurs when the buyer "fails to make an effective rejection" after a reasonable opportunity to inspect, or "does any act inconsistent with the seller's ownership[.]" TEX. BUS. & COM. CODE ANN. § 2.606(a)(2), (3); TEX. BUS. & COM. CODE § 2-606 cmt. 1 (The word "'acceptance' as applied to goods means that the buyer, pursuant to the contract, takes particular goods which have been appropriated to the contract as his own, whether or not he is obligated to do so, and whether he does so by words, action, or silence when it is time to speak."). "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." TEX. BUS. & COM. CODE ANN. § 2.602(a). "When the buyer fails to pay the price as it becomes due[,] the seller may recover" the price of the goods the buyer accepted. TEX. BUS. & COM. CODE ANN. § 2.709(a)(1).

*Application*

WestPoint had a contract to supply goods on credit to SDSA. But SDSA did not order the goods delivered pursuant to PO 7438 and PO 7385-1, so it had no obligation to accept—and thus become liable for—the goods contained in those orders. *See European Imp. Co., Inc. v. Lone Star Co., Inc.*, 596 S.W.2d 287, 289 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (liability for unordered goods arises if the goods are received and appropriated to their use and were of the value specified in the account). The question before the trial court, and now before this court, is whether SDSA raised a fact question as to whether it accepted the goods it did not order.

*PO 7438*

We first address purchase order 7438.[2]

| Order | Contents | Delivery | Invoice |
|-------|----------|----------|---------|
| PO 7438 | Sunshine Simplicity Towels | 8/3/17 | $61,020.00 |

Below, SDSA argued it did not have a contract with WestPoint for the goods contained in PO 7438, and it did not order or accept these goods. SDSA relied on the affidavit of its president, William L. Jones, which stated:

> SDSA did not accept or agree to pay for . . . PO 7438. . . . SDSA contacted [WestPoint] and refused to accept the shipment[]. [WestPoint] failed to accept the return of the shipment[] and did not pick up the container[] or the individual goods.

---

[2] As a preliminary matter, SDSA argues Texas Business and Commerce Code section 602.002 "provide[s] some guidance." Under section 602.002, "[u]nless otherwise agreed, a person to whom unsolicited goods are delivered: (1) is entitled to refuse to accept delivery of the goods; and (2) is not required to return the goods to the sender." This statute applies to goods that are delivered but not accepted. *See id*. As described in this opinion, SDSA failed to present evidence to raise a genuine issue of material fact on whether it accepted these goods. *See, e.g.,* Genevieve Hebert Fajardo & Ramona L. Lampley, 27 *Texas Practice Series: Consumer Rights & Remedies* § 2.39 (3d ed. 2022) (noting that even under the UCC-superseded "common law of contracts [which] was weighted in favor of the businessman who made mailings of merchandise to unwary customers a way of doing business. . . the recipient's use of the merchandise was such an exercise of dominion over the goods as to imply an acceptance and obligation to pay."). The uncontroverted summary judgment evidence shows that SDSA used—and therefore accepted—these goods. *See id*. We conclude section 602.002 does not apply here.

Jones's affidavit included his lay assertion that SDSA did not accept the goods in PO 7438. But under the UCC, "acceptance" is a term of art. TEX. BUS. & COM. CODE ANN. § 2.606(a)(3). To defeat WestPoint's motion for summary judgment, SDSA was required to show that it took no actions inconsistent with WestPoint's ownership of the goods. *See id*. Jones's affidavit simply did not do this.

Rather than rejecting or attempting to reject the goods, the evidence shows SDSA approved delivery of the goods before they were delivered, asked for an extension to pay the balance due after the goods were delivered, and then sold the goods. *Id*. § 2.606(a)(2), (3); *see Ho v. Wolfe*, 688 S.W.2d 693, 696 (Tex. App.—Amarillo 1985, no writ) (physical possession and exercise of dominion of the goods supports finding of acceptance). The UCC provides that when the buyer "does any act inconsistent with the seller's ownership," the buyer accepts the goods. *See* TEX. BUS. & COM. CODE § 2.606(a)(3). SDSA's actions were inconsistent with its contention that WestPoint still owned the goods, and its summary judgment evidence failed to raise a fact question otherwise. The evidence conclusively negated SDSA's claim that it did not accept the goods contained in PO 7438. TEX. BUS. & COM. CODE § 2.606(a)(3); *see also* TEX. R. CIV. P. 166a(c).

*PO 7385-1*

We next address purchase order 7385-1.

| Order | Contents | Delivery | Invoice |
|-------|----------|----------|---------|
| PO 7385-1 | Poly Sunshine T200 Sheets | 11/2/17 | $112,806.24 |

As with PO 7438, WestPoint presented evidence that SDSA accepted the goods in PO 7385-1 and that it was therefore obligated to pay for them as a matter of law. WestPoint's evidence established that when SDSA discovered PO 7385-1 was scheduled for delivery in November, it expressed

surprise and said it did not need the products but told WestPoint that SDSA "will get it resolved." WestPoint delivered the goods in PO 7385-1 and billed SDSA for them. SDSA asked for "leeway" in paying for PO 7385-1. SDSA paid smaller invoices but repeatedly apologized for not paying the larger invoices including PO 7385-1. After WestPoint's attorneys sent a demand letter for the past due amount of $179,989.44, SDSA's representative left a voicemail with the attorneys stating, "My name's Glenn Stafford. I'm with Sunshine Distributors. I need to talk to you about the WestPoint Home money that I owe . . . . I appreciate it. I know I owe this money, and I need to talk to you and see what we can work out where I can get it resolved." After those communications, SDSA sold its entire inventory but did not pay WestPoint for the goods contained in PO 7385-1.

In response, SDSA again relied on Jones's affidavit that "SDSA did not accept or agree to pay for PO 7385-1" and "SDSA contacted Plaintiff and refused to accept the shipment[.]" SDSA also presented two notes written by Glenn Stafford.

- A note dated November 1, 2017 explained, "I received a call from a trucking co. about a delivery for tomorrow from Westpoint. I had no idea what it was so I called David Hannon. He said it was a container [Sunshine's president] had ordered in the spring. I was not informed of this from [Sunshine's president] when Sunshine was purchased in June. I asked [Sunshine's president and] she called David Hannon [and] said to him it had not been confirmed to send it. The order was for $112,806.24.

- A note dated January 13, 2018 provided, "I called Valerie Scholovich with Westpoint today. I asked due to us not ordering the container from 11/2 I would like to ship it all back to Westpoint. She said since we accepted the shipment, she felt they would not accept the product back.

We are obligated to view the evidence in the light most favorable to SDSA and indulge every reasonable inference in its favor. *Lujan*, 555 S.W.3d at 84. But even if SDSA's evidence raised a fact issue as to whether SDSA effected reasonable, seasonable notice of rejection of the goods contained in PO 7385-1, SDSA subsequently exercised ownership by acknowledging its

responsibility to pay the invoice and selling its entire inventory, including the goods in PO 7385-1. These undisputed actions rendered wrongful any otherwise rightful rejection SDSA may have attempted. TEX. BUS. & COM. CODE ANN. §§ 2.602(b), 2.703(5), 2.709(a). WestPoint conclusively proved SDSA accepted the goods that filled PO 7385-1.

### Failure of Consideration

Although WestPoint proved its entitlement to judgment as a matter of law with regard to PO 7438 and PO 7385-1, SDSA asserted affirmative defenses that, it contends, required the trial court to deny summary judgment. SDSA's first affirmative defense, failure of consideration, "presupposes that there was a consideration . . . in the first instance, but that it later failed." *Nat'l Bank of Commerce v. Williams,* 84 S.W.2d 691, 622 (Tex. 1935); *see Failure of Consideration*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Unlike *consideration*, the phrase *failure of consideration* relates not to the formation of a contract but to its performance."). SDSA argues that because it did not order, accept, or agree to purchase the goods, the "consideration" from WestPoint—the delivery of the goods—failed. But as discussed above, regardless of whether SDSA ordered or agreed to buy the goods at issue, the evidence conclusively proved SDSA accepted the goods WestPoint delivered. In these circumstances, SDSA's affirmative defense of failure of consideration does not defeat its acceptance of the goods as a matter of law. *See* TEX. BUS. & COM. CODE § 2.606(a)(3); TEX. R. CIV. P. 166a(i).

### Failure to Mitigate Damages

Next, SDSA asserted the affirmative defense of failure to mitigate damages. But a seller has no duty to mitigate a buyer's damages by accepting a return of goods that were previously delivered and accepted. *See F & P Builders v. Lowe's of Tex., Inc.*, 786 S.W.2d 502, 503 (Tex. App.—Dallas 1990, no writ) ("[S]ection 2.709(a)(1) supplants any duty upon the seller to mitigate damages for goods delivered and accepted."); TEX. BUS. & COM. CODE § 2.709(a)(1); *see id.* cmt.

2 ("The action for the price is now generally limited to those cases where resale of the goods is impracticable except where the buyer has accepted the goods[.]"). Because, as discussed above, the evidence conclusively proved SDSA accepted the goods WestPoint delivered, WestPoint had no obligation to mitigate its damages by accepting a return of the goods as a matter of law. *See id*. Failure to mitigate damages is simply not an affirmative defense to the liability theories WestPoint has asserted here. *See id*.

As there were no genuine issues as to any material facts regarding SDSA's acceptance of the goods or its affirmative defenses, WestPoint was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c), (i); *Lightning Oil Co.*, 520 S.W.3d at 45.

### Attorney's Fees

#### Standard of Review and Applicable Law

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). "Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id*.

#### Application

Here, WestPoint presented "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. It therefore shifted the summary judgment burden to SDSA. *See* TEX. R. CIV. P. 166a(c).

In response, SDSA presented the affidavit of its attorney, Sean Rooney, to support its contention that "the combined number of hours spent on the case by [WestPoint's] attorneys are

unreasonable." In that affidavit, Rooney established his qualifications to provide an opinion on the reasonableness of WestPoint's attorney's fees, then testified:

> In my opinion, the attorney's fees sought by [WestPoint] as part of [WestPoint's] Motion for Summary Judgment are unreasonable. [WestPoint's] attorney has produced over 100 pages of billing statements claiming fees of $84,066.50 as of March 31, 2021. In addition to this amount, [WestPoint] requests an additional $10,000 in fees for the Motion for Summary Judgment.
>
> The number of hours necessary to total this number are unreasonable given the nature of the case, the work performed by the attorneys involved, the level of skill necessary to perform the services rendered, and the complexity of the case. There has only been written discovery exchanged in the case, with approximately 300 total pages of production exchanged between the parties, and there have been no complex hearings or other procedural matters, no depositions, and no mediation. . . .
>
> Additionally, the fees sought include duplicate, unreasonable, and repetitive work performed by a separate law firm based in South Carolina, Nelson Mullins.

Taking this evidence as true, as summary judgment standards of review require us to do, we conclude this affidavit raised a genuine issue of material fact concerning the reasonableness and necessity of WestPoint's attorney's fees. *See Jay Petroleum, L.L.C. v. EOG Resources, Inc.*, 332 S.W.3d 534, 543 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). As a result, WestPoint was not entitled to judgment as a matter of law on its attorney's fee claim.

### CONCLUSION

We reverse the portion of the trial court's judgment that awards $89,002.25 in attorney's fees and expenses to WestPoint. We affirm the remainder of the trial court's judgment.

Beth Watkins, Justice